IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| EDUARDO TREVINO | § | |
|     TDCJ-CID # 926058 | § | |
| v. | § | C.A. NO. C-09-155 |
| | § | |
| CANDACE MOORE | § | |

**OPINION DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT**

This is a civil rights action filed by a state prisoner pursuant to 42 U.S.C. § 1983. Pending are Plaintiff's motion for summary judgment, (D.E. 79), and Defendant's cross-motion for summary judgment. (D.E. 107). For the reasons stated herein, Plaintiff's motion is hereby DENIED, and Defendant's motion is hereby GRANTED.

**I. JURISDICTION**

The Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331. After consent by the parties, (D.E. 10, 38), this case was referred to a magistrate judge to conduct all further proceedings, including entry of final judgment. (D.E. 41); see also 28 U.S.C. § 636(c).

**II. PROCEDURAL HISTORY**

On June 22, 2009, Plaintiff filed this action raising civil rights claims against prison officials at the McConnell Unit in Beeville, Texas. (D.E. 1). A Spears[1] hearing was conducted on July 22, 2009. (D.E. 16). On August 5, 2009, an Order was entered to dismiss certain claims and retain the case. (D.E. 23). The only claim retained was a retaliation claim against Defendant Candace Moore, the prison law librarian. Id. (D.E. 25). Defendant filed an answer

---

[1] Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); see also Eason v. Holt, 73 F.3d 600, 603 (5th Cir. 1996) (testimony given at a Spears hearing is incorporated into the pleadings).

on September 9, 2009. (D.E. 32).

## III. SUMMARY JUDGMENT EVIDENCE

When a state inmate requests admission to the prison law library, he must submit his "name, TDCJ number, housing assignment, **work assignment** and work hours." (D.E. 79, at 23) (emphasis added). They are "prohibited from requesting law library access or law library materials for another offender." Id. Before June 2009, only a minority of prisoners at the McConnell Unit filled out their I-60 lay-in requests, which are used to gain access to the law library, with incorrect work assignments, but they were still admitted to the law library. (D.E. 107, Ex. A at 1). However, at that time, Defendant realized that some prisoners were submitting fraudulent requests under other prisoners' names, and when they did, they listed only a general description of work assignments because they did not know the prisoners' precise assignments. Id. at 1-2. This posed a security threat to prisoners and library safety, and caused delays. Id. To correct this problem, Defendant began requiring prisoners to submit their requests listing the precise work assignments that appeared for each prisoner on the library's UCR screen, because they were less likely known by potential frauds. Id. Any request that did not contain a correct, precise work assignment was denied. Id. at 2.

Beginning with a request for a lay-in on June 9, 2009, the prison law library began denying Plaintiff's requests for listing what Defendant viewed as an incorrect work assignment. (D.E. 110, Ex. C at 32). In total, from June 9, 2009 through July 2, 2009, Defendant denied twenty-one of Plaintiff's requests, all of which specified his work assignment as "1st Garment," or some variation thereof. Id. at 32, 35; (D.E. 1, at 7-16, 21-22); (D.E. 18, at 20-26, 36-47, 52). According to information listed on Defendant's UCR screen, Plaintiff's work assignment was

actually "production tech 1st." (D.E. 107, Ex. A at 2). At least one other inmate, Tony Chavez, was also denied access to the law library around the same time because he listed a work assignment other than one listed for him on Defendant's UCR screen. (D.E. 79, at 5).

When Plaintiff received his denied requests, some had instructions written on them by someone in the prison law library. The June 10, 2009 form had his work assignment circled and written next to it was "Incorrect job information" and "Resubmit." (D.E. 1, at 21). The June 11, 2009 form also had his work assignment circled and written beneath it was "offender's work assignment is production tech 1st" and "unable to process not correct info." (D.E. 110, Ex. C at 32). The June 28, 2009, June 30, 2009, and July 2, 2009 requests explained that requests with incorrect information would be denied, and to resubmit his request with his correct job assignment. (D.E. 18, at 20, 24, 26). The July 2, 2009 request was also marked with "Production Tech 1st," which was circled. Id. at 20. Conversely, Plaintiff submitted one request during that time period – for June 12, 2009 – that was approved even though it included his incorrect work assignment. (D.E. 110, Ex. C at 33, Ex. D at 7). Additionally, he twice submitted requests during that period – for July 12 and 13, 2009 – on which he listed his work assignment as "production tech 1st." (D.E. 1, at 17-20). Both were approved and Plaintiff was admitted to the law library those days. Id.

In response to a grievance Plaintiff filed on June 12, 2009 complaining that Defendant was wrongly denying his admission requests, Warden Jackson instructed Defendant no later than July 2, 2009 to accept Plaintiff's law library requests with whatever work assignment he had been using. (D.E. 110, Ex. C at 29, 42-43). Subsequently, in the month of July 2009, Plaintiff's requests for the 3rd, 9th, 10th, and 24th were approved while ones for the 7th, 8th, and 11th were

not.  (D.E. 17, at 1); (D.E. 18, at 5, 7-11, 13-14, 17-19, 28-29); (D.E. 110, Ex. D at 13).  In August 2009, according to McConnell Unit Law Library Visit Logs, he was admitted on the 11th, 12th, 14th, and 15th, and denied on the 13th.  (D.E. 110, Ex. C at 73, 80-85).  In September 2009, according to the Law Library Visit Logs, he was admitted on the 3rd, 4th, 5th, 9th, 10th, and 11th, but denied on the 29th.  Id. at 14-21; (D.E. 18, at 32-33).  The reasons for the denials in July, August, and September are unknown.  Additionally, he was admitted on January 29, 2010.  (D.E. 126, at 4).

Besides Plaintiff's June 12, 2009 grievance, he has filed one state civil suit and over thirty prison grievances against Defendant.  (D.E. 79, at 4-5).  It is unclear when the lawsuit was originally filed, but Plaintiff's appeal in the case was dismissed on July 29, 2008.  (D.E. 21, at 8-9).  Defendant was unaware of the lawsuit, but did know about the grievances.  (D.E. 107, Ex. A at 2).

In addition to denying Plaintiff access to the law library, and in response to Plaintiff's requests for materials submitted between January 2, 2010 and January 8, 2010 while the McConnell Unit was on lock-down, Defendant delivered the wrong library materials to Plaintiff and removed the correct materials before a full twenty-four hours transpired.  (D.E. 124, at 6-8).  He further alleges that on January 6, 2010, Major Jesus Ambriz confiscated his typewriter and typing supplies.  (D.E. 123, at 3).  He also claims that Defendant denied him copies of decisions when the McConnell Unit was on lock-down starting December 25, 2009.  (D.E. 124, at 1-2).

A.   **Plaintiff's History Of Filed Grievances.**

Plaintiff has filed multiple prison grievances whereby he complained about Defendant:[2]

1. A Step 1 grievance filed on December 8, 2008. (D.E. 110, Ex. C at 1-2). A corresponding Step 2 grievance filed on January 27, 2009. Id. at 3-4.

2. A Step 1 grievance filed on March 27, 2009. Id. at 5-6. A corresponding Step 2 grievance filed on May 12, 2009. Id. at 12-13.

3. A Step 1 grievance filed on May 12, 2009. Id. at 15-16. A corresponding Step 2 grievance filed on June 11, 2009. Id. at 21-22.

4. A Step 1 grievance filed on May 22, 2009. (D.E. 21, at 22-23). A corresponding Step 2 grievance filed on July 2, 2009. Id. at 24-25.

5. A Step 2 grievance filed on June 10, 2009. (D.E. 21, Ex. C at 54-55).

6. A Step 1 grievance filed on June 12, 2009. (D.E. 40, at 10-11). A corresponding Step 2 grievance filed on July 6, 2009. Id. at 12-13.

7. A Step 1 grievance filed on June 22, 2009. (D.E. 21, at 37-38). A corresponding Step 2 grievance filed on July 21, 2009. Id. at 35-36.

8. A Step 1 grievance filed on July 7, 2009. Id. at 28-29.

9. A Step 2 grievance filed on July 15, 2009. Id. at 31-32.

10. A Step 1 grievance filed on August 18, 2009. (D.E. 110, Ex. C at 64-65).

B.   **Plaintiff's History Of Lay-in Requests**.

Plaintiff has filed with the Court copies of numerous I-60 forms whereby he requested to be allowed to use the prison library on the following dates and times:

---

[2] Plaintiff also filed a Step 1 and Step 2 grievance from 2006. (D.E. 18, at 9-12). However, they do not appear to address his retaliation claim against Defendant.

5

1.June 1, 2009 from 1:00 p.m. - 3:00 p.m.  (D.E. 110, Ex. C at 30).

2.June 2, 2009 from 1:00 p.m. - 3:00 p.m.  <u>Id.</u>

3.June 6, 2009 from 8:00 a.m. - 10:00 a.m.  <u>Id.</u> at 31.

4.June 6, 2009 from 7:00 a.m. - 9:00 a.m.  <u>Id.</u>

5.June 9, 2009 from 1:00 p.m. - 3:00 p.m.  <u>Id.</u> at 32.

6.June 10, 2009 from 1:00 p.m. - 3:00 p.m.  (D.E. 1, at 22).

7.June 10, 2009 from 1:00 p.m. - 3:00 p.m.  <u>Id.</u> at 21.

8.June 10, 2009 from 1:00 p.m. - 3:00 p.m.  <u>Id.</u> at 23.

9.June 11, 2009 from 1:00 p.m. - 3:00 p.m.  <u>Id.</u> at 22.

10.June 12, 2009 from 8:00 a.m. - 10:00 a.m.  <u>Id.</u> at 19-20.

11.June 13, 2009 from 7:00 a.m. - 9:00 a.m.  <u>Id.</u> at 17-18.

12.June 16, 2009 from 1:00 p.m. - 3:00 p.m.  <u>Id.</u> at 15-16.

13.June 17, 2009 from 1:00 p.m. - 3:00 p.m.  <u>Id.</u> at 13-14.

14.June 18, 2009 from 1:00 p.m. - 3:00 p.m.  <u>Id.</u> at 9-10.

15.June 19, 2009 from 8:00 a.m. - 10:00 a.m.  <u>Id.</u> at 11-12.

16.June 19, 2009 from 8:00 a.m. - 10:00 a.m.  <u>Id.</u> at 7-8.

17.June 19, 2009 from 8:00 a.m. - 10:00 a.m., or 1:00 p.m. - 3:00 p.m.  (D.E. 110, at 35).

18.June 20, 2009 from 7:00 a.m. - 9:00 a.m., or 10:00 a.m. - 12:00 p.m.  (D.E. 18, at 52).

19.June 23, 2009 from 1:00 p.m. - 3:00 p.m.  <u>Id.</u> at 46-47.

20.June 24, 2009 from 1:00 p.m. - 3:00 p.m.  <u>Id.</u> at 44-45.

21.June 25, 2009 from 1:00 p.m. - 3:00 p.m.  <u>Id.</u> at 42-43.

22.June 26, 2009 from 7:00 a.m. - 9:00 a.m., or 1:00 p.m. - 3:00 p.m.  <u>Id.</u> at 38-39.

23.     June 26, 2009 from 1:00 p.m. - 3:00 p.m.  <u>Id.</u> at 40-41.

24.     June 27, 2009 from 7:00 a.m. - 9:00 a.m., or 10:00 a.m. - 12:00 p.m.  <u>Id.</u> at 36-37.

25.     June 28, 2009.  <u>Id.</u> at 26.

26.     June 30, 2009 from 1:00 p.m. - 3:00 p.m.  <u>Id.</u> at 24-25.

27.     July 1, 2009 from 1:00 p.m. - 3:00 p.m.  <u>Id.</u> at 22-23.

28.     July 2, 2009 from 1:00 p.m. - 3:00 p.m.  <u>Id.</u> at 20-21.

29.     July 3, 2009 from 7:00 a.m. - 9:00 a.m., or 1:00 p.m. - 3:00 p.m.  <u>Id.</u> at 28-29.

30.     July 7, 2009 from 1:00 p.m. - 3:00 p.m.  <u>Id.</u> at 19.

31.     July 8, 2009 from 1:00 p.m. - 3:00 p.m.  <u>Id.</u> at 17-18.

32.     July 9, 2009 from 1:00 p.m. - 3:00 p.m.  <u>Id.</u> at 9-10.

33.     July 9, 2009 from 1:00 p.m. - 3:00 p.m.  <u>Id.</u> at 11.

34.     July 10, 2009 from 7:00 a.m. - 9:00 a.m.  <u>Id.</u> at 7-8.

35.     July 11, 2009 from 1:00 p.m. - 3:00 p.m.  <u>Id.</u> at 13-14.

36.     August 11, 2009 from 1:00 p.m. - 3:00 p.m.  (D.E. 110, Ex. C at 69).

37.     August 12, 2009 from 1:00 p.m. - 3:00 p.m.  <u>Id.</u> at 71.

38.     August 13, 2009 from 1:00 p.m. - 3:00 p.m.  <u>Id.</u> at 73.

39.     August 14, 2009 from 8:00 a.m. - 10:00 a.m.  <u>Id.</u> at 75.

40.     August 15, 2009 from 8:00 a.m. - 10:00 a.m.  <u>Id.</u> at 77.

41.     September 29, 2009 from 1:00 p.m. - 3:00 p.m.  (D.E. 18, at 32-33).

42.     January 29, 2010 from 1:00 p.m. - 3:00 p.m.  (D.E. 126, at 4).

**C.      Plaintiff's History Of Admittance To The Prison Law Library**.

Plaintiff was admitted to the prison law library on the following dates and times:

1.  May 8, 2009 from 5:00 a.m. - 7:00 a.m.  (D.E. 1, at 1).

2.  June 2, 2009 from 1:06 p.m. - 3:00 p.m.  (D.E. 110, Ex. D at 2).

3.  June 2, 2009 from 3:05 p.m. - 3:44 p.m.  Id. at 3.

4.  June 3, 2009 from 1:00 p.m. - 3:00 p.m.  Id. at 4.

5.  June 5, 2009 from 8:05 a.m. - 8:59 a.m.  Id. at 5.

6.  June 6, 2009 from 7:02 a.m. - 9:02 a.m.  Id. at 6.

7.  June 12, 2009 from 5:08 a.m. - 7:02 a.m.  Id. at 7.

8.  June 13, 2009 from 12:00 p.m. - 3:30 p.m.  (D.E. 18, at 5).

9.  June 20, 2009 from 7:00 a.m. - 9:00 a.m.  Id.

10. June 20, 2009 from 6:00 p.m. - 9:00 p.m.  Id.

11. July 3, 2009 from 8:00 a.m. - 10:00 a.m.  Id.

12. July 9, 2009.  (D.E. 17, at 1).

13. July 10, 2009 from 8:00 a.m. - 10:00 a.m.  (D.E. 110, Ex. D at 13).

14. July 24, 2009 from 5:30 a.m. - 7:00 a.m.  (D.E. 18, at 5).

15. August 11, 2009 from 1:00 p.m. - 3:05 p.m.  (D.E. 110, Ex. C at 80).

16. August 11, 2009 from 3:05 p.m. - 3:50 p.m.  Id. at 81.

17. August 12, 2009 from 3:15 p.m. - 4:00 p.m.  Id. at 82.

18. August 14, 2009 from 8:00 a.m. - 10:00 a.m.  Id. at 83.

19. August 14, 2009 from 10:01 a.m. - 10:56 a.m.  Id. at 84.

20. August 15, 2009 from 7:07 a.m. - 9:15 a.m.  Id. at 85.

21.	September 3, 2009 from 3:07 p.m. - 3:40 p.m.  (D.E. 110, Ex. D at 14).

22.	September 4, 2009 from 8:07 a.m. - 9:55 a.m.  Id. at 15.

23.	September 5, 2009 from 8:22 a.m. - 8:59 a.m.  Id. at 16.

24.	September 9, 2009 from 1:05 p.m. - 3:07 p.m.  Id. at 17.

25.	September 9, 2009 from 3:09 p.m. - 3:45 p.m.  Id. at 18.

26.	September 10, 2009 from 1:05 p.m. - 3:00 p.m.  Id. at 19.

27.	September 10, 2009 from 3:07 p.m. - 3:30 p.m.  Id. at 20.

28.	September 11, 2009 from 8:00 a.m. - 10:00 a.m.  Id. at 21.

29.	January 29, 2010 from 8:00 a.m. - 10:00 a.m.  (D.E. 126, at 4).

## IV.  DISCUSSION

Plaintiff claims that Defendant denied him access to the law library because he filed grievances against her in the past, and had even filed a state court lawsuit naming her as a defendant.  (D.E. 1).  In support of his motion for summary judgment, he asserts that the facts he alleges clearly indicate a prima facie case for retaliation; that Defendant denied him access to the law library over 18 times, even though the warden instructed her to give him access, after he filed over 30 grievances and a state lawsuit against her.  (D.E. 79, at 6-7).  Additionally, he alleges that Defendant is not entitled to qualified immunity because she knew she was acting illegally.  Id. at 5-6.

In Defendant's cross-motion for summary judgment, she asserts that Plaintiff has failed to prove any of the elements required for retaliation; that his constitutional rights were never violated, that Defendant had no retaliatory intent, that Defendant's actions were not adverse to Plaintiff, and that no retaliatory intent caused Defendant's actions.  (D.E. 107, at 12-18).

9

Furthermore, she claims she is entitled to qualified immunity from any liability. Id. at 10.

### A. The Standard Of Review For Summary Judgment Motions.

Summary judgment is appropriate when there is no disputed issue of material fact, and one party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Courts must consider the record as a whole, including all pleadings, depositions, affidavits, interrogatories and admissions on file, in the light most favorable to the non-movant. Caboni v. Gen. Motors Corp., 278 F.3d 448, 451 (5th Cir. 2002).

The party seeking summary judgment bears the initial burden of demonstrating an absence of a genuine issue of material fact and informing the court of the basis for its motion by identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which support its contention. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Williams v. Adams, 836 F.2d 958, 960 (5th Cir. 1988). Any controverted evidence must be viewed in the light most favorable to the non-movant, and all reasonable doubts must be resolved against the moving party. See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990).

If the moving party makes the required showing, then the burden shifts to the non-movant to show that a genuine issue of material fact remains for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986); Fields v. City of S. Houston, 922 F.2d 1183, 1187 (5th Cir. 1991) (citation omitted). The non-movant cannot merely rest on the allegations of the pleadings, but must establish that there are material controverted facts in order to preclude summary judgment. Fed. R. Civ. P. 56(e); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986) (citation omitted). Summary judgment is proper if the non-movant fails to make a

showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof.  Celotex, 477 U.S. at 322-23; ContiCommodity Servs., Inc. v. Ragan, 63 F.3d 438, 441 (5th Cir. 1995) (citations omitted).

**B.    Plaintiff's Retaliation Claim Does Not Survive Summary Judgment.**

A prisoner's First Amendment right of access to the courts includes the right to seek redress through an established prison system.  See Jackson v. Cain, 864 F.2d 1235, 1248-49 (5th Cir. 1989).  Prison officials may not retaliate against a prisoner for exercising this right.  Woods v. Smith, 60 F.3d 1161, 1164 (5th Cir. 1995) (citations omitted).  Because it is well established that prison officials may not retaliate against a prisoner for exercising the right to file lawsuits and administrative grievances, actions that might not otherwise be offensive to the Constitution can give rise to a constitutional claim if taken in retaliation for the exercise of the protected conduct.  Id. at 1165 ("an action motivated by retaliation for the exercise of a constitutionally protected right is actionable, even if the act, when taken for a different reason, might have been legitimate") (citations omitted).

To state a valid § 1983 claim for retaliation, "a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation."  Jones v. Greninger, 188 F.3d 322, 324-25 (5th Cir. 1999) (per curiam) (citing McDonald v. Stewart, 132 F.3d 225, 231 (5th Cir. 1998)).  To satisfy the causation prong, the adverse act must not have occurred but for the retaliatory motive.  McDonald, 132 F.3d 231 (citing Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997)).  An inmate must allege more than his personal belief that he is the victim of retaliation.  Johnson, 110 F.3d at 310 (citation omitted).  "Mere conclusory allegations of

11

retaliation will not withstand a summary judgment challenge." Woods, 60 F.3d at 1166 (citation omitted). The Fifth Circuit has explained that an "inmate must produce direct evidence of motivation or, the more probable scenario, 'allege a chronology of events from which retaliation may be plausibly inferred.'" Id. (citation omitted).

The purpose of allowing § 1983 retaliation claims is to ensure that prisoners are not unduly discouraged from exercising their constitutional rights. Morris v. Powell, 449 F.3d 682, 686 (5th Cir. 2006) (citing Crawford-El v. Britton, 523 U.S. 574, 588 n.10 (1998)). However, some acts, even though they may be motivated by retaliatory intent, are so de minimis that they would not deter the ordinary person from further exercise of his rights. Id. Such acts do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim. Id. For example, a job transfer from the commissary to the kitchen might be de minimis, while a transfer to a more dangerous unit might constitute an adverse retaliatory act. Id. at 687.

Thus, to prevail on his retaliation claim against Defendant, Plaintiff must establish that: (1) Defendant had retaliatory intent based on Plaintiff exercising his First Amendment right of access to the courts; (2) the retaliatory act was more than inconsequential or de minimis, and was capable of deterring a person of ordinary firmness from further exercising his constitutional rights; and, (3) but for the retaliatory motive, the adverse action would not have occurred. McDonald, 132 F.3d at 231.

Plaintiff has not shown that Defendant acted with retaliatory intent in denying his requests for admittance to the law library. He attempted to accomplish this through a chronology of his grievances against Defendant, and her denial of his lay-in requests. It is true that Plaintiff has filed numerous grievances against Defendant as well as a civil suit. However, that lawsuit

was disposed of on July 29, 2008, almost a year before the events underlying this litigation began. Furthermore, the first instance of Plaintiff being denied admittance to the law library occurred on June 9, 2009. Before then, he had been admitted to the law library on June 1, June 2, and twice on June 6 in 2009 even though he had recently submitted grievances about Defendant on May 12, 2009 and May 22, 2009. Moreover, he did not file a grievance between June 6, 2009, when he was admitted, and June 9, 2009, when he was first denied admittance.

Plaintiff may not rest on the prima facie case established in his complaint. He cannot point to any event that would have triggered the alleged retaliation. Rather, Defendant's renewed enforcement of a once lax library requirement lay at the root of Defendant's denials. Indeed, Plaintiff was granted access to the law library on June 12 and 13, 2009 when he submitted his requests with "production tech 1st" as his work assignment, and Defendant instructed Plaintiff how to correctly fill out his requests multiple times.

Defendant denied Plaintiff's requests because he incorrectly filled out his lay-in requests, not because she was retaliating against him. She required prisoners to use a precise work assignment in order to reduce fraud and increase safety. She enforced the requirement against prisoners other than Plaintiff. Moreover, when he complied with the requirement, he was admitted to the law library. These facts indicate that Defendant enforced this requirement in good faith, and not simply to engage in a retaliatory campaign against Plaintiff. If Defendant had been retaliating against Plaintiff, she would have found an excuse to deny him access even if he complied with the rules.

Because Defendant's enforcement of the library rule regarding work assignment was motivated by the needs for prison security and efficient administration, Defendant has met her

13

initial burden. After the burden shifted back to Plaintiff, he merely rested on the original allegations in his pleadings. Accordingly, when looking at the facts in the light most favorable to Plaintiff, he has not established that Defendant retaliated against him.

### C.     Defendant Is Entitled To Qualified Immunity.

The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. __, 129 S. Ct. 808, 815 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). When a defendant invokes the defense of qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam) (citation omitted). "To discharge this burden, a plaintiff must satisfy a two-prong test." Atteberry v. Nocana Gen. Hosp., 430 F.3d 245, 253 (5th Cir. 2005). "First, he must claim that the defendants committed a constitutional violation under current law." Id. (citations omitted). "Second, he must claim that defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of." Id. While it will often be appropriate to conduct the qualified immunity analysis by first determining whether a constitutional violation occurred and then determining whether the constitutional right was clearly established, that ordering of the analytical steps is no longer mandatory. Pearson, 555 U.S. at __, 129 S. Ct. at 818 (receding from Saucier v. Katz, 533 U.S. 194 (2001)).

Because Plaintiff's retaliation claim fails, he has not asserted a constitutional violation. By the same token, because he has failed to state a constitutional violation, the Court need not

examine whether Defendant's actions were reasonable.  See Saucier, 533 U.S. at 201 (if the facts alleged do not establish that the officer's conduct violated a constitutional right, then the qualified immunity analysis need proceed no further and qualified immunity is appropriate).  Accordingly, Defendant is entitled to qualified immunity.

## V.  CONCLUSION

Based on the foregoing, Plaintiff's motion for summary judgment, (D.E. 79), is denied, and Defendant's cross-motion for summary judgment, (D.E. 107), is granted.

Ordered this 11th day of February 2009.

_____
BRIAN L. OWSLEY
UNITED STATES MAGISTRATE JUDGE